IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT DOUGLAS WHITE<br><br>        Plaintiff<br>v.<br><br>CITYWIDE TITLE CORP., WELLS FARGO HOME MORTGAGE,<br><br>        Defendants | Case No. 18-CV-2086 |

## COMPLAINT AT LAW

Plaintiff, ROBERT DOUGLAS WHITE ("PLAINTIFF"), by and through his counsel, ELLIS LEGAL P.C., states for his Complaint against Defendants CITYWIDE TITLE CORP. ("Citywide") and WELLS FARGO HOME MORTGAGE ("Wells Fargo," sometimes collectively hereinafter referred to as "DEFENDANTS") as follows:

### NATURE OF ACTION

1. The current cause of action arises out of a data breach of Plaintiff's personal data stored or otherwise retained by Defendants, and the subsequent fraudulent transfer of funds that caused Plaintiff actual damages in excess of $75,000.00.

### PARTIES, JURISDICTION, AND VENUE

2. At all relevant times set forth herein Plaintiff was a resident and citizen of the State of Texas.

3. At all relevant times set forth herein, Defendant Citywide was a citizen of the State of Illinois. Citywide is incorporated in Illinois and its principal place of business is in Illinois.

4. At all relevant times set forth herein, Defendant Wells Fargo was incorporated in Delaware and headquartered in California.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties are diverse and the matter in controversy exceeds the sum or value of $75,000.00. The claims arise from business transacted within Illinois, Plaintiff's claims arise from the commission of tortious acts within this state, and Defendants transact business within Illinois.

6. The Court has personal jurisdiction over Defendants. The transaction giving rise to the cause of action occurred in Illinois, the cause of action arises out of the commission of a tortious act within the State of Illinois, and Defendants are corporations doing business within the State of Illinois.

7. Defendants do business in this state and a substantial part of the events giving rise to the claim took place within the District for the United States District Court for the Northern District of Illinois, Eastern Division, and as such, venue is proper in this Court.

**FACTUAL ALLEGATIONS**

8. On or about May 30, 2017, Plaintiff contracted to buy a property located at 2015 West Birchwood Avenue, Unit 2, Chicago, IL 60645.

9. At or about that time, Defendant Citywide held itself out as especially qualified in the field of real estate closings and title transfers, and represented through its web advertising that its "service is unprecedented" and its "quality is unparalleled."

10. On or about May 30, 2017, Plaintiff hired Citywide to assist with closing for the residential unit located at the above stated address.

11. At least a portion of the services that Citywide provided required that Plaintiff provide personal information including, but not limited to, email address, home address, social security number, telephone number, date of birth, and other personal and identifying information.

12. Plaintiff, at all times relevant to this litigation, maintained a substantial property right to his personal data that Citywide obtained.

13. At all times relevant to this litigation, Citywide, in its normal course of business required, collected, received, analyzed, stored, maintained, or otherwise was in control of personal information from its clients. Citywide collected this information so it could facilitate real estate closings and title transfers, the sector in which Citywide operated.

14. In the course of its business with Plaintiff, Citywide communicated with him and other individuals related to this transaction, including but not limited to real estate agents and attorneys. Citywide chose to communicate with both Plaintiff and the aforementioned individuals via electronic mail, and often initiated and engaged in e-mail communications to groups of individuals related to this transaction.

15. As the title company and acting escrow agent, Citywide controlled the process by which the transfer of funds, and subsequent transfer of title, would occur to facilitate the real estate purchase. Citywide informed Plaintiff that it would at a certain point provide exact instructions regarding the funds transfer and recipient banking information.

16. Citywide did not provide Plaintiff with any opportunity to receive instructions in a secure manner.

17. On or about June 27, 2017, Citywide informed Plaintiff that it was shortly thereafter sending him instructions via e-mail directing him how and where to transfer the funds for the purchase of the property. Citywide instructed Plaintiff to be prepared to follow those instructions

quickly as the funds needed to be received within a certain number of days to complete the purchase.

18. On information and belief, at or about that time Citywide experienced a cybersecurity data breach of its electronic storage system and/or its internet data affecting multiple transactions and operations within the company.

19. On or before June 27, 2017, an unknown party obtained Plaintiff's personal information, as well as sensitive information pertaining to the transfer of funds for closing on the aforementioned property, from the electronic storage system and/or internet data of Citywide.

20. On or about June 27, 2017, the unknown third party utilized Plaintiff's personal information and information pertaining to the transaction to fraudulently induce Plaintiff to wire the funds to an account that was used not to further the interest of the closing, but to deprive Plaintiff of the funds.

21. As a result of the information acquired from Citywide's process failure and data breach, the unknown third party was able to pose as an agent of Citywide and send Plaintiff an email that contained Plaintiff's private information, as well as information pertinent to the real estate transaction, that Plaintiff believed only Citywide possessed.

22. Citywide did not make Plaintiff aware that there was a breach in its security, and as such, Plaintiff forwarded the fraudulent transfer instructions to the financial institution controlling his funds, Wells Fargo.

23. Citywide did not make Plaintiff aware of the risks associated with the email communication process it initiated, encouraged, and required.

24. The transfer instructions emailed to Plaintiff listed the recipient as "TD Bank" located at 5042 W. 12th Ln, Miami, FL 33012. A routing number and account number were also included.

25. At no time relevant to this litigation was there a TD Bank located at the above address.

26. Defendant Wells Fargo subsequently transferred the funds without performing any due diligence regarding the purported recipient of the funds.

27. Defendant Wells Fargo had no commercially reasonable security procedure in place to ensure that the entity receiving the funds was an actual financial institution, let alone the named bank or party set forth for the wire transfer. The lack of a commercially reasonable security procedure caused the funds to be transferred to the account of a party that was not associated with the above-mentioned real estate transaction.

28. Ultimately, an unknown third party removed these funds from the account and they could not be recovered.

29. As a direct and proximate result of Defendants' conduct, Plaintiff suffered actual damages in excess of $75,000.00.[1]

## COUNT I: NEGLIGENCE (CITYWIDE TITLE CORP.)

30. Plaintiff hereby restates and realleges paragraph 1-29 above and incorporates by reference said paragraphs as though fully restated herein.

31. Citywide provided services to Plaintiff regarding a real estate purchase and closing. Citywide held itself out to be an expert in such transactions, and it is for this reason that Plaintiff

---

[1] Plaintiff lost at least $177,000.00.

hired Citywide. As a hired expert in this area, Citywide owed Plaintiff a duty of reasonable care while providing the aforementioned services.

32. On or before June 27, 2017 Citywide, acting in its capacity as escrow agent for Plaintiff, had a duty of reasonable care in conducting the closing, including disbursing funds to the proper parties and notifying the parties to the escrow of potential fraud. This duty of reasonable care included taking reasonable steps to protect the private information of Plaintiff.

33. Citywide, through its acts or omissions, unlawfully breached its duty to Plaintiff by failing to prevent unauthorized access to its electronically stored information. Citywide failed to properly secure and protect the stored data through reasonable means.

34. Citywide additionally breached its duty to Plaintiff by failing to properly warn Plaintiff of the security breach and of the potential acquisition of his private information.

35. Citywide's failure to protect Plaintiff's personal information and information pertinent to the sale directly resulted in a third party obtaining that information and using it to the detriment of Plaintiff.

36. The failure to notify Plaintiff of Citywide's cybersecurity breach caused Plaintiff to rely upon contents of an email that contained information that Plaintiff believed only Citywide was in possession of. Based upon this reliance, Plaintiff initiated the transfer of his money to an account of a party that was not associated with the sale of real estate, and the funds were not able to be recovered.

37. As a result of the third party obtaining Plaintiff's personal information and information pertinent to the sale, Plaintiff suffered actual damages in excess of $75,000.00.

6

### **COUNT II: NEGLIGENCE (WELLS FARGO)**

38. Plaintiff hereby restates and realleges paragraph 1-37 above and incorporates by reference said paragraphs as though fully restated herein.

39. Wells Fargo, as the financial institution responsible for maintaining and servicing Plaintiff's funded accounts, owed Plaintiff a duty of reasonable care while storing, controlling access to, and moving Plaintiff's funds. This duty of care extended to responding to service requests such as wire transfers and ensuring that transfers are directed to their intended recipients.

40. This duty of care existed before and during the transaction that provides the basis of these claims, and Wells Fargo owed said duty of care to Plaintiff at all times relevant to this claim.

41. On or about June 27, 2017, Wells Fargo through its acts or omissions unlawfully breached its duty to Plaintiff by failing to implement or maintain commercially reasonable security procedures when initiating, conducting, and completing a wire transfer using Plaintiff's funds.

42. As a result, Wells Fargo failed to properly identify and verify the bank receiving the funds. This failure caused Wells Fargo to transfer Plaintiff's funds to an account that was not associated with any bank related to the transaction, thereby injuriously depriving Plaintiff of his personal property.

43. Had a reasonable security procedure been in place, Wells Fargo would have been able to discover that the prescribed address in fact identified residential housing and was not associated with the transaction.

44. Wells Fargo breached its duty of reasonable care in failing to secure Plaintiff's funds and in failing to ensure that the funds were not transferred to a fraudulent account unrelated to the intended recipient.

45. Had Wells Fargo implemented and maintained commercially reasonable security procedures, the fraudulent account transfer could and should have been both discovered and prevented, thereby preventing the loss of Plaintiff's funds.

46. As a result of the fraudulent wire transfer conducted by Wells Fargo, Plaintiff suffered actual damages in excess of $75,000.00.

### COUNT III: BREACH OF FIDUCIARY DUTY (CITYWIDE TITLE CORP.)

47. Plaintiff hereby restates and realleges paragraph 1-46 above and incorporates by reference said paragraphs as though fully restated herein.

48. Citywide, acting as an escrow agent for the transaction for real estate that Plaintiff was closing on, owed a fiduciary duty to Plaintiff.

49. Citywide through its acts or omissions unlawfully breached its duty to Plaintiff, acting outside of the scope of the escrow agreement, by disclosing Plaintiff's private information, as well as information pertinent to Plaintiff's purchase of real estate, to a third party.

50. Citywide also unlawfully breached its fiduciary duty to Plaintiff by failing to properly warn Plaintiff of the risk to his data and private information incurred by following Citywide's encouraged process, specifically, in responding to Citywide's email communications and following Citywide's email instructions.

51. Citywide also unlawfully breached its fiduciary duty to Plaintiff by failing to properly warn Plaintiff of the risk to his data and private information when Citywide experienced a cybersecurity breach.

52. Citywide's breach of fiduciary duty was a proximate cause of Plaintiff's injury. Had Citywide not disseminated Plaintiff's personal information, Plaintiff would not have been

subject to the third party's scheme. Similarly, had Citywide notified Plaintiff of the security breach, he would not have been induced to rely on the contents of the fraudulent email.

53. Because of Citywide's breach, Plaintiff suffered actual damages in excess of $75,000.00.

### COUNT IV: BREACH OF FIDUCIARY DUTY (WELLS FARGO)

54. Plaintiff hereby restates and realleges paragraph 1-53 above and incorporates by reference said paragraphs as though fully restated herein.

55. Wells Fargo, as the financial institution controlling and possessing Plaintiff's personal funds, owed a fiduciary duty to Plaintiff.

56. Wells Fargo through its acts or omissions unlawfully breached its fiduciary duty to Plaintiff by failing to implement and/or follow a commercially reasonable security procedure, failing to secure Plaintiff's funds, and in failing to ensure that the funds were not transferred to a fraudulent account unrelated to the intended recipient.

57. Wells Fargo's breach of fiduciary duty was a proximate cause of Plaintiff's injury. Had Wells Fargo implemented and maintained commercially reasonable security procedures, the fraudulent account transfer could and should have been both discovered and prevented, thereby ultimately preventing the loss of Plaintiff's funds.

58. Because of Wells Fargo's breach, Plaintiff suffered actual damages in excess of $75,000.00.

### COUNT V: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT UNDER 815 ILCS 505/1 *ET SEQ* (CITYWIDE TITLE CORP.)

59. Plaintiff hereby restates and realleges paragraph 1-58 above and incorporates by reference said paragraphs as though fully restated herein.

9

60. A non-resident plaintiff may pursue a private cause of action under the Consumer Fraud and Deceptive Business Practices Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois. S.H.A. 815 ILCS 505/1(f), 2, 10a(a). *Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill. 2d 100, 187 (2005).

61. Citywide is a person for the purposes of the Illinois Consumer Fraud and Deceptive Business Practices Act under 815 ILCS 505/1(c).

62. Plaintiff is a consumer for the purposes of the Illinois Consumer Fraud and Deceptive Business Practices Act under 815 ILCS 505/1(e).

63. At all times material hereto Citywide conducted trade and commerce within the meaning of 815 ILCS 505/1(f).

64. The Illinois Consumer Fraud and Deceptive Business Practices Act provides, in relevant part, that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practices described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 6, 1965, in conduct of any trade or commerce are hereby declared unlawful, whether any person has in fact been misled, deceived, or damaged thereby.

815 ILCS 505/2.

65. By choosing electronic mail to communicate with its clients, agents, and other attorneys and individuals involved in related transactions, Citywide engaged in unfair methods of competition and unfair or deceptive acts and/or practices. The use of email communications in transactions of real estate and funds transfers forced Plaintiff to unwittingly incur substantial risks, including but not limited to the risk of "hacking" and theft of sensitive information.

66. The Illinois Consumer Fraud and Deceptive Business Practices Act additionally provides, in relevant part, that:

> Any data collector that maintains or stores, but does not own or license, computerized data that includes personal information that the data collector does not own or license shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person. In addition to providing such notification to the owner or licensee, the data collector shall cooperate with the owner or licensee in matters relating to the breach. That cooperation shall include, but need not be limited to, (i) informing the owner or licensee of the breach, including giving notice of the date or approximate date of the breach and the nature of the breach, and (ii) informing the owner or licensee of any steps the data collector has taken or plans to take relating to the breach. The data collector's cooperation shall not, however, be deemed to require either the disclosure of confidential business information or trade secrets or the notification of an Illinois resident who may have been affected by the breach.

815 ILCS 505/10(b).

67. Citywide possessed private information that Citywide had required Plaintiff to provide.

68. Under Section 10 of this Act, Citywide was required to notify Plaintiff of any breach immediately upon discovery, as it presented an immediate threat to the security of his private information.

69. Citywide failed to, at any point then or thereafter, notify Plaintiff of a data breach.

70. An unknown third party was subsequently able to use the data acquired in the breach to pose as Citywide in emails, and sent such a fraudulent email to Plaintiff. As a direct result of Citywide's failure to notify Plaintiff of the security breach, Plaintiff was fraudulently induced to rely on an email purporting to be from Citywide, that was actually authored by an unknown third-party.

71. In initiating, encouraging, and requiring email communications for these business matters, Citywide engaged in misrepresentations, unlawful schemes, and course of conduct that induced Plaintiff to contract with Citywide through one or more of the following unfair methods of competition and unfair and/or deceptive acts and/or practices:

   a. representing that Citywide could adequately maintain and protect Plaintiff's data in the context of his real estate transaction;

   b. representing that Citywide could adequately perform the function of escrow agent for the purposes of Plaintiff's real estate transaction;

   c. initiating communications regarding sensitive information, including that related to real estate purchases and transfers of significant amounts of funds, via electronic mail;

   d. encouraging communications regarding sensitive information, including that related to real estate purchases and transfers of significant amounts of funds, via electronic mail;

   e. requiring communications regarding sensitive information, including that related to real estate purchases and transfers of significant amounts of funds, via electronic mail;

   f. failing to inform Plaintiff of the risks associated with conducting such business via electronic mail;

   g. failing to offer Plaintiff a safe, secure alternative by which to communicate sensitive information pertaining to the relevant transaction;

   h. failing to safely store and maintain Plaintiff's private information and data;

      i. failing to prevent a security breach that allowed the theft of Plaintiff's private information and data; and

      j. failing to notify Plaintiff of the breach of security and the subsequent theft of his private information and data.

72. The facts that Citywide misrepresented were material to Plaintiff's decision to contract with Citywide in that Plaintiff would not have entered into said contract but for Citywide's unfair methods of competition and its unfair and/or deceptive acts and/or practices.

73. The unfair methods of competition and unfair and/or deceptive acts and/or practices alleged herein occurred in connection with Citywide's conduct of trade and commerce in Illinois.

74. Citywide intended for Plaintiff to contract with it in reliance upon Citywide's unfair methods of competition as well as its unfair and/or deceptive acts and/or practices in the marketing and advertising of Citywide's services.

75. Citywide's unfair methods of competition and its unfair and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether Plaintiff's private information would be secure during the relevant real estate transaction.

76. As a result of Citywide's unfair methods of competition and its unfair and/or deceptive acts and/or practices, Plaintiff suffered damages in excess of $75,000.00.

### COUNT VI: INVASION OF PRIVACY (CITYWIDE TITLE CORP.)

77. Plaintiff hereby restates and realleges paragraph 1-76 above and incorporates by reference said paragraphs as though fully restated herein.

78. During the course of its business with Plaintiff, Citywide solicited personal information from Plaintiff, including, but not limited to, email address, address, social security number, telephone number, date of birth, and other personal and identifying information.

79. Plaintiff provided this information to Citywide in the belief that it was necessary for very limited and specific purposes (i.e. conducting the transfer of funds and title), that it would not be transferred, sold, or shared with any other individual or entity, and that it would be safely stored and maintained by Citywide.

80. Citywide did not safely store and maintain Plaintiff's private information.

81. Instead, Citywide, through its actions or omissions, allowed Plaintiff's personal information, as well as sensitive information pertinent to the real estate sale, to be obtained by one or more fraudulent third parties.

82. This unauthorized acquisition and usage of Plaintiff's personal information is outrageous, violative of his rights, and highly offensive to a reasonable person. The information was not of legitimate concern to the public and Citywide should never have allowed any other individual or entity to access it.

83. As a direct and proximate cause of the aforementioned, Plaintiff suffered mental anguish and emotional distress, as well as actual damages in excess of $75,000.00.

WHEREFORE, Plaintiff respectfully requests the entry of judgment in his favor and against Defendants Citywide Title Corp. and Wells Fargo Home Mortgage:

A. An award of compensatory damages that includes the full amount of funds lost to Plaintiff during the fraudulent transaction;

B. Punitive damages;

    C.  An award of prejudgment interest, computed according to 735 ILCS 5/2-1303;

    D.  An award to Plaintiff for reasonable attorneys' fees and costs; and

    E.  All other relief this Court deems just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: March 22, 2018　　　　　　　　　　　　By:＿＿＿/s/ Samantha Ditore＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant


John C. Ellis (#59328)
Samantha Ditore
ELLIS LEGAL P.C.
200 W. Madison, Suite 1940
(312) 967-7629
jellis@ellislegal.com